IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHERIDA SIMPSON, et al.,**

      **Plaintiffs,**

  v.                               Civil Action 2:24-cv-4307

                                      Magistrate Judge Kimberly A. Jolson

**CITY OF COLUMBUS,**

      **Defendant.**

## OPINION AND ORDER

This matter, in which the parties consented to the Undersigned's jurisdiction under 28 U.S.C. § 636(c), is before the Court on Defendant's Motion to Dismiss (Doc. 10), and Plaintiffs' Motion for Leave to Amend Complaint (Doc. 13). The Court **GRANTS** Defendant's Motion, **DENIES** Plaintiffs' Motion, and **GRANTS** Plaintiffs leave to amend their pleading a final time.

**I. BACKGROUND**

On November 23, 2022, Plaintiff Sherida Simpson rented a U-Haul truck in Columbus, Ohio. (Doc. 8 at ¶ 3). Just before 2:00 P.M., she left the U-Haul office in her own vehicle. (*Id.* at ¶¶ 3–4). Her cousin, Plaintiff Jeremy Mclinn, followed in the truck. (*Id.*). Some time later, multiple Columbus police vehicles began tailing them. (*Id.* at ¶ 5). Plaintiffs allege the officers did so because they believed Plaintiffs stole the U-Haul. (*Id.* at ¶¶ 8–9).

Near Plaintiff Simpson's home, "at least five" police vehicles pulled Plaintiffs over. (*Id.* at ¶¶ 4, 6). Officers ordered Plaintiff Mclinn out of the truck, forced him "onto his stomach on the pavement," handcuffed him, and put him in the back of a police vehicle. (*Id.* at ¶ 6). Plaintiff Simpson looked on while officers pointed their guns at her. (*Id.*). Eventually, she "convinced the police officers to look at the [U-Haul] rental paperwork." (*Id.* at ¶ 7). After calling U-Haul "to

verify the rental," officers released Plaintiff Mclinn. (*Id.*). In the end, Plaintiffs allege that police assumed they stole the U-Haul and treated them "harshly" because they are Black. (*Id.* at ¶ 8–9; *see also id.* at ¶ 1 (identifying Plaintiffs as "natural African American person[s]" residing in Ohio)).

Plaintiffs initiated this lawsuit in state court against the City of Columbus Division of Police, raising one count under 42 U.S.C. § 1983 for violating the Fourteenth Amendment's Equal Protection Clause. (*See* Doc. 1-5 (noting this case was filed on November 20, 2024); Doc. 3 at 3 (improperly listing Section 1983 under Title 29)). Shortly after, the Division of Police removed the case to this Court and moved to dismiss Plaintiffs' complaint. (Docs. 1, 4). In that motion, the Division of Police argued Plaintiffs should have sued the City of Columbus instead. (Doc. 4 at 1 (saying the police department is not *sui juris*)). Plaintiffs moved to amend their complaint to fix that deficiency. (Doc. 6). The Court granted their request on January 7, 2025. (Doc. 7 (noting Plaintiffs could amend as of right under the circumstances); Doc. 8 (Plaintiffs' First Amended Complaint)).

The next day, Defendant the City of Columbus filed the instant Motion to dismiss Plaintiffs' First Amended Complaint. (Doc. 10). Once more, Plaintiffs moved to amend. (Docs. 13 (attaching a proposed Second Amended Complaint)). Both Motions are ripe for review. (Docs. 10, 13, 15, 16).

## II. STANDARD

Two rules matter here. Because Plaintiffs already amended once "as a matter of course," they must meet Rule 15's standard to amend again. Fed. R. Civ. P. 15(a)(1); (Doc. 7). Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that when a party seeks leave to file an amended pleading, "[t]he court should freely give leave when justice so requires." The rule, which allows a liberal policy in favor of granting amendments, "reinforce[s] the principle that cases

'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)).  In exercising its discretion, a court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The last factor—futility of the amendment—shares the same standard with motions brought under Federal Rule of Civil Procedure 12(b)(6). *Ross v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").  Both require a complaint to "state a claim to relief that is plausible on its face" to proceed for further development. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must offer well-pleaded facts, not just conclusory allegations).  In other words, while "detailed factual allegations" are not required, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

3

### III. DISCUSSION

As noted, Defendant moves to dismiss Plaintiffs' First Amended Complaint. (Doc. 10). Instead of meaningfully defending the sufficiency of their current allegations, Plaintiffs seek to change their pleadings yet again. (Doc. 13). Given the early stages of this litigation and Rule 15's leniency, amendment would seem to be appropriate. But Defendant responds that the new amendment still fails to meet pleading requirements and allowing amendment would be futile. (Doc. 16). Given this posture, the true question before the Court is whether the First Amended Complaint or the proposed Second Amended Complaint does enough to survive a motion to dismiss. Because neither does, Plaintiffs' Motion for Leave to Amend Complaint (Doc. 13) is **DENIED**, and Defendant's Motion to Dismiss (Doc. 10) is **GRANTED**.

#### A. Plaintiffs' First Amended Complaint

In their First Amended Complaint, Plaintiffs bring a single cause of action against Defendant for "violations of the Fourteenth Amendment Equal Protection Clause." (Doc. 8 at ¶ 11 (cleaned up)). Defendant argues the claim loses for one reason: Plaintiffs seek to hold a city liable based upon the actions of individual police officers. (Doc. 10 at 4–7).

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court determined that under Section 1983, "a municipality cannot be held liable" under a *respondeat superior* theory, or put simply, "*solely* because it employs a tortfeasor." 436 U.S. 658, 691 (1978). Rather, municipalities "are responsible only for their *own* illegal acts," not "their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 36 U.S. at 692; *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis in original) (internal quotations omitted); *see also Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 436 (6th Cir. 2013) (saying municipalities cannot be held liable under Section 1983 "because injuries were inflicted by its employees"). For

4

that reason, a plaintiff suing a municipality under Section 1983, otherwise known as a *Monell* claim, must "specify a governmental policy or custom from which his injuries flowed." *Brown*, 517 F. App'x at 436 (citing *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010)). To do so, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)); *see also D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (saying the same).

Plaintiffs' First Amended Complaint does not do that. In it, Plaintiffs describe what police officers did, like their "threats of lethal force" and their treatment of Plaintiffs "as dangerous criminals." (Doc. 8 at ¶¶ 12, 13; *see also id.* at ¶¶ 5–10). But they hardly mention Defendant at all. (*Id.* at ¶¶ 1–10 (saying only that Defendant is a "municipal corporation" and that the officers were Columbus police)). More critically, they do not cite any city policy or custom that could have caused their alleged injuries. (*Id.*). By supporting their claim with only factual allegations about the officers' actions, Plaintiffs are, in essence, trying to hold Defendant liable under the kind of *respondeat superior* theory that *Monell* rejected. 436 U.S. at 691–95; *Pembaur*, 475 U.S. at 478. As a result, their First Amended Complaint fails to state a Section 1983 claim, and Defendant's Motion to dismiss it is well-taken.

**B.     Plaintiffs' Proposed Second Amended Complaint**

In their proposed amendment, Plaintiffs try to fix this problem. This time, they point to a "common practice" of Defendant's as the driving force behind their alleged injuries. (Doc. 13-1 at ¶¶ 10–12). And rather than abandoning their factual allegations concerning the police, Plaintiffs

5

now seek to add Section 1983 claims against the unidentified officers as well. (*Id.* at ¶¶ 3 (adding Doe Defendants), 14–17). All told, though, Plaintiffs' amendment does not sufficiently state a Section 1983 claim against any proposed defendant. The Court begins with the municipal liability claims before addressing the request to add the unidentified officers.

1. *Municipal Liability*

The Second Amended Complaint seemingly invokes two possible theories of municipal liability under *Monell* and its progeny: a failure-to-train claim and a custom-of-tolerance claim. (Doc. 13-1 at ¶¶ 10–12); *see Burgess*, 735 F.3d at 478 (listing the four types of claims).

a. *Failure to Train*

Beginning with the former, a municipality's inadequate training amounts to Section 1983 liability only "when it evinces deliberate indifference for the rights of those with whom the governmental employees have contact, such that the inadequate training may be fairly said to represent the government's policy or custom." *Brown*, 517 F. App'x at 436 (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quotation omitted). A plaintiff can meet this "stringent standard" in two ways. *Id.* Either she must allege (1) "evidence of prior instances of unconstitutional conduct demonstrating that the municipality had notice that the training was deficient and likely to cause injury but ignored it," or (2) "evidence of a single violation . . . accompanied by a showing that the municipality had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Okolo v. Metro Gov't of Nashville*, 892 F.Supp.2d 931, 942 (M.D. Tenn. 2012) (cleaned up) (quoting *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 562–63 (6th Cir. 2011)).

Plaintiffs rely on the first option: a history of unconstitutional conduct. (Doc. 13-1 at

¶¶ 10–12). To state this type of claim, Plaintiffs must plausibly allege "(1) a clear and persistent pattern of illegal activity, (2) which [Defendant] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that [Defendant's] custom was the cause of the deprivation of [their] constitutional rights." *Osberry v. Slusher*, 750 F. App'x 385, 397 (6th Cir. 2018) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)); *see also Linden v. City of Southfield*, 75 F.4th 597, 605 (6th Cir. 2023) (requiring a plaintiff to plead that the municipality "failed to act in response to repeated complaints of constitutional violations by its officers" (quotation omitted)).

Five sentences in Plaintiffs' Second Amended Complaint provide the whole of their allegations against Defendant:

> 10. Plaintiffs assert that the City's Police have developed and/or been trained [on] the common practice of assuming that Black suspects are armed and dangerous and acted on that practice against Plaintiffs with no reason other than their race. This practice has been demonstrated in the recent cases of Donovan Lewis (2022), Henry Green (2016), Jamie Overstreet (2023), Andre Hill (2020), and Janathaen Strum (2022) as some examples.
>
> 11. The City's Police were also the subject of a lawsuit regarding its overreaction against Black citizens participating in the Black Lives Matter protests in 2020 in Case No. 2:20-cv-3431 in the U.S. District Court for the Southern District of Ohio, thereby further demonstrating, and increasing, their antipathy towards Black citizens. The claims in this lawsuit were for denial of constitutional rights.
>
> 12. Defendant City of Columbus has taken no actions designed to address the issues set forth in ¶¶ 10 and 11 above and have therefore acquiesced and shown indifference to those unconstitutional customs and practices.

(Doc. 13-1 at ¶¶ 10–12; *cf. id.* at ¶¶ 4–9, 13 (alleging only individual officers' actions)).

All told, these broad assertions are not enough to plead any element of a failure-to-train claim. (*Id.* at ¶¶ 10–12). Notably, Plaintiffs do not specify what training methods or inadequacies they challenge. (*Id.*). In fact, beyond saying that a "common practice" exists, Plaintiffs give no details at all about Defendant's training policies. (*Id.* at ¶ 10). Without more, their assertion that

7

officers are trained to assume "Black suspects are armed and dangerous" is merely conclusory. (*Id.*); *see Iqbal*, 556 U.S. at 678 (saying "labels and conclusions" cannot state a claim for relief (internal quotation omitted)); *Brown*, 517 F. App'x at 436 (finding a statement that "other inmates urged [the plaintiff] to be quiet because the correctional officers were known to have 'blanket parties', a euphemistic term of the beating of prisoners," too conclusory to state a failure-to-train claim). Said differently, Plaintiffs do not provide Defendant with "fair notice" of the factual basis underlying their failure-to-train claim. *Twombly*, 550 U.S. at 545; *see Linden*, 75 F.4th at 606 (affirming a dismissal where the plaintiff did not plead "factual allegations about the content or extent of training" received); *Batton v. Sandusky Cnty.*, No. 3:21-cv-1771, 2023 WL 375206, at *6 (N.D. Ohio Jan. 24, 2023) (finding a complaint did not provide fair notice of a failure-to-train claim where it contained no facts about what training the city did or did not provide).

Plaintiffs also provide too few facts to allege a pattern of constitutional violations. In their proposed amendment, they list five Black men's names and refer to a lawsuit about the 2020 Black Lives Matter protests. (*Id.* at ¶ 10 (naming Donovan Lewis, Henry Green, Jamie Overstreet, Andre Hill, and Janathaen Strum), 11 (citing *Tamara Alsaada v. City of Columbus*, No. 2:20-cv-3431 (S.D. Ohio Sept. 16, 2020))). But Plaintiffs say nothing more about these "examples," except that one involved the "denial of constitutional rights." (*Id.* at ¶ 10, 11). For instance, Plaintiffs do not explain what happened to these people, what actions officers took, or how Defendant reacted to those incidents. (*Id.* at ¶¶ 10–12 (saying only that these cases are "some examples" that "the City's Police have developed and/or been trained [on] the common practice of assuming that Black suspects are armed and dangerous")).

These details matter because not just any prior complaint of police misconduct will do. The previous instances must be factually similar "to the conduct at issue." *Osberry*, 750 F. App'x

8

at 397–98; *see also Sweat v. Butler*, 90 F.Supp.3d 773, 781 (W.D. Tenn. 2015) ("Complaints that concern unrelated allegations of misconduct will not support a failure to train . . . claim." (internal quotation omitted)). Given this requirement, Plaintiffs must allege the facts of the cases well enough for the Court to make a reasonable inference that a "clear and persistent pattern" of unconstitutional conduct exists. *Osberry*, 750 F. App'x at 397. Simply listing cases—as Plaintiffs do here—is not enough. *See Sistrunk v. City of Hillview*, 545 F.Supp.3d 493, 504 (W.D. Ky. 2021) ("[M]erely citing other pending lawsuits does not describe and cannot support [a failure-to-train claim]."); *Dillon v. Hamlin*, 718 F.Supp.3d 733, 741 (S.D. Ohio 2024) (saying the same); *see, e.g.*, *Bickerstaff*, 830 F.3d at 393–94, 402 (finding a plaintiff did not state a failure-to-train claim where she broadly asserted, without factual support, that supervisors were aware of an officer's history of improper relationships with alleged victims).

As to the last two elements, notice and causation, Plaintiffs again say too little. For instance, while Plaintiffs allege Defendant "[took] no actions" after the prior cases occurred, they do not explain how these cases put Defendant on notice that remedial training was needed. *Osberry*, 750 F. App'x at 397 (saying the need for additional training must be "so obvious" that a municipality can be held liable). Nor do they say what training inadequacies caused Plaintiffs' alleged injuries or what methods could have been implemented to prevent them. *See Bickerstaff*, 830 F.3d at 402 (noting a plaintiff must show a "direct causal link" between the alleged government policy and their "alleged constitutional violation"); *Linden*, 75 F.4th at 606 (finding a complaint did not state a failure-to-train claim and noting that certain facts "undermine[d] the inference that the First Responders would have acted differently had they received more or different training from the City").

At bottom, without more factual context, nothing in the Second Amended Complaint

9

pushes Plaintiffs' failure-to-train claim from merely possible to plausible. *Twombly*, 550 U.S. at 557; *see Johnson v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:10-cv-0589, 2010 WL 3619790, at *3 (M.D. Tenn. Sept. 13, 2010) (finding an amended complaint failed to state a failure-to-train claim where it provided no facts about the alleged prior instances); *cf. Stillwagon v. City of Delaware*, 175 F.Supp.3d 874, 906–07 (S.D. Ohio 2016) (finding an amended failure-to-train claim was not futile where the plaintiff added specific allegations about prior written complaints and a report detailing an officer's history of committing perjury); *Scott v. Louisville/Jefferson Cnty. Metro. Gov't*, 503 F.Supp.3d 532, 539 (W.D. Ky. 2020) (allowing a failure-to-train claim to proceed where the complaint discussed news articles about the city's crowd control methods, along with press conferences connecting those methods to the protests underlying the plaintiffs' case); *Daugherty v. Louisville-Jefferson Cnty. Metro. Gov't*, 495 F.Supp.3d 513, 525 (W.D. Ky. 2020) (finding a plaintiff stated a failure-to-train claim where they provided a series of articles about similar constitutional violations, multiple similar lawsuits, and statements from city officials about the relevant practices). As a result, Plaintiffs fail to state a *Monell* claim under this theory.

                b.       *Custom of Tolerance*

Plaintiffs' custom-of-tolerance claim is doomed for similar reasons. Like a failure-to-train claim, this liability theory requires Plaintiffs to allege, in part, "'a clear and persistent pattern' of rights violations'" and "'notice or constructive notice on the part of the defendant.'" *Dillon*, 718 F.Supp.3d at 743 (quoting *Thomas*, 398 F.3d at 429); *see also Burgess*, 735 F.3d at 478 (noting both types of *Monell* claims require a history of similar incidents). As discussed, Plaintiffs make no attempt to show that "the prior examples of wrongdoing" cited in their proposed amendment are similar to their case. *Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024); (Doc. 13-1 at ¶¶ 10–12). This is the key to pleading a custom-based claim. *Id.* (saying the crux of this type

10

of *Monell* claim is a showing of "particularized" similarities between the prior incidents and the instant case). Without such a comparison, Plaintiffs have not plausibly pled a pattern. *See Doe v. Claiborne Cnty., Tenn. By and Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508–09 (6th Cir. 1996) (finding a plaintiff did not allege enough similar examples of inaction to plead a custom-of-tolerance claim); *Sistrunk*, 545 F.Supp.3d at 503–04 (finding that unsupported citations to three incidents did not state a *Monell* claim).

What's more, Plaintiffs' reliance on the cases provided is perplexing since, on the surface, many of them are unhelpful to their claim. For example, while Plaintiffs say *Alsaada* shows Defendant's "antipathy toward Black citizens," that case alleged officers mistreated protesters of many races, not just Black protesters. (Doc. 13-1 at ¶ 11); *Alsaada*, No. 2:20-cv-3431 (S.D. Ohio Sept. 16, 2020) (Doc. 2 at ¶ 3, 24–49) (showing the protesters "comprised a multi-racial group"). Another of Plaintiffs' chosen cases occurred in Columbus, Georgia—not Columbus, Ohio. *Janathaen Strum v. Officer Shane Abreo*, No. 4:23-cv-61 (M.D. Ga. May 23, 2024) (Doc. 35). And two others could not have put Defendant on notice of rights violations because one happened months after Plaintiffs' incident, and the other resulted in a jury verdict finding the officers did not violate anyone's constitutional rights. *Joelle New, Administrator of the Estate of Jamie Overstreet v. City of Columbus*, No. 2:24-cv-2253 (S.D. Ohio May 8, 2024) (Doc. 1) (discussing the August 23, 2023, killing of Jamie Overstreet); *Adrienne Hood, Administrator of the Estate of Henry Green V v. City of Columbus*, No. 2:17-cv-417 (S.D. Ohio June 25, 2022) (Doc. 401 at 1, 3) (jury verdict form marking "no" when asked if officers "violated Henry Green's constitutional right to be free from excessive force").

Plaintiffs' remaining citations to Andre Hill and Donovan Lewis do not save their claim either. To start, two incidents, on their own, are likely too scant to allege a "widespread,

permanent, and well-settled" custom. *Wallace v. Coffee Cnty.*, 852 F. App'x 871, 876 (6th Cir. 2021) (saying six incidents was not enough to establish a custom); *see also Doe*, 103 F.3d at 508–09 (suggesting two, isolated instances do not amount to a custom or policy of inaction); *Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) (saying "three discrete instances in one investigation" is not enough for this type of *Monell* claim); *Jones v. Muskegon Cnty.*, 625 F.3d 935, 946 (6th Cir. 2010) (deciding five incidents is insufficient).

The cases' statuses also present potential pitfalls. Defendant continues to litigate Mr. Lewis's case and represents that it settled Mr. Hill's. *Donovan Lewis v. City of Columbus*, No. 2:24-cv-1841 (S.D. Ohio Oct. 17, 2024) (Doc. 23) (staying the case pending an appeal); (Doc. 16 at 4). So, neither case has resulted in express findings of unconstitutional conduct that could support Plaintiffs' allegation of a custom or pattern. *Dillon*, 718 F.Supp.3d at 741, 743 (rejecting a plaintiff's citation to a pending case for this reason). Still more, courts within and outside of the Sixth Circuit have called into question the "legal effect of citing pending litigation in support of a *Monell*" claim. *Sistrunk*, 545 F.Supp.3d at 504 n.3 (collecting cases). Given these issues, neither case provides particularly probative evidence to bolster Plaintiffs' allegations. *Cf. Iqbal*, 556 U.S. at 678 (requiring a complaint to present more than "a sheer possibility" that a defendant acted unlawfully).

Ultimately though, the claim's demise comes down to a pleading issue. While Plaintiffs need not provide "detailed factual allegations" at this stage, they must state "well-pleaded factual allegations" that plausibly show Defendant has a custom or policy of ignoring similar constitutional violations. *Twombly*, 550 U.S. at 555–56; *see also Burgess*, 735 F.3d at 478 ("[A] custom . . . claim requires a showing that there was a pattern of . . . similar claims."). A list of names is not that. As it stands, Plaintiffs' Second Amended Complaint tells the Court nothing

12

about how the prior instances compare to Plaintiffs' or whether they put Defendant on notice of the potential for recurring constitutional violations. (Doc. 13-1 at ¶¶ 10–12); *see, e.g.*, *Simmons v. Cnty. of Wayne*, No. 22-11953, 2023 WL 7449840, at *14 (E.D. Mich. Sept. 11, 2023), *report and recommendation adopted*, No. 22-11953, 2023 WL 6807001 (E.D. Mich. Oct. 16, 2023) (saying "the mere fact that a number of lawsuits have been filed" is not enough to state a *Monell* claim (internal quotation omitted)) (collecting cases finding the same). Consequently, the Court finds that Plaintiffs' amendment, as it pertains to Defendant, fails to state a claim.

    2.    *Doe Defendants*

As discussed, Plaintiffs sued only entities in their first two attempts to plead. (Docs. 3, 8). Now, they seek to add John and Jane Doe police officers to the case and ask that their claims against them "relate back" to their initial complaint's filing date. (Doc. 13 at 1). Once more, the Court cannot grant their request.

At base, these additions come too late. In Ohio, Section 1983 claims have a two-year statute of limitations. *Fisher v. City of Columbus*, No. 2:24-cv-150, 2024 WL 5077761, at *3 (S.D. Ohio Dec. 11, 2024) (citing *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017)). Under Federal Rule of Civil Procedure 15(c), amendments that add new parties "establish[] a new and independent cause of action" that cannot relate back to the date of an original filing or otherwise circumvent the statute of limitations. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010). Here, though Plaintiffs filed suit before the two-year limitations period expired, they did not name any Doe Defendants in their initial complaint. (Docs. 1, 3). Now, the statute of limitations has passed. As a result, Plaintiffs' proposed claims against the Doe Defendants are time-barred. *Rayfield v. City of Grand Rapids*, 373 F.Supp.3d 962, 974–77 (W.D. Mich. 2018) (finding claims against John Doe defendants that

13

were added after the limitations period did not relate back under Rule 15(c)), *aff'd*, 768 F. App'x 495, 502–03 (6th Cir. 2019); *Burgos v. Philadelphia Prison Health Sys.*, No. 08-1179, 2009 WL 2710240, at *2 n.5 (E.D. Pa. Aug. 26, 2009) (same).

Adding to these problems, the claims fail for pleading deficiencies. To succeed on a Section 1983 claim, a plaintiff must allege enough facts to plausibly suggest that each defendant violated the plaintiff's constitutional rights. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019). General allegations against a group of defendants will not suffice. *Id.* (saying a "[s]ummary reference to a single, five-headed 'Defendants'" is not enough for a Section 1983 claim). That is all Plaintiffs offer here, and without facts specific to each Doe Defendant, the Court cannot reasonably infer that any of them violated Plaintiffs' constitutional rights. (*See* Doc. 13-1 at ¶¶ 7–9, 14 (grouping allegations against all ten Doe Defendants together)); *Iqbal*, 556 U.S. at 678; *Jillson v. Medlin*, No. 3:19-cv-394, 2019 WL 3027016, at *5 (M.D. Tenn. July 11, 2019) (dismissing claims against "John Doe Physicians" because the plaintiff did not describe specific actions they took).

\*\*\*

The Court does not discount Plaintiffs' allegations that they feared for their safety because of officers' actions. (Doc. 13-1 at ¶ 14). Their proposed amendment, however, does not state a Section 1983 claim against Defendant or any unidentified police officer. Therefore, the Court **DENIES** Plaintiffs' Motion for leave to amend as futile. (Doc. 13); *Linden*, 75 F.4th at 606 (affirming the denial of a motion to amend where the previous complaint "failed to plead the elements of *Monell* liability," and the proposed complaint included no additional facts).

14

### C. Leave to Amend

Because the Court has granted Defendant's motion to dismiss and denied Plaintiffs' motion to amend, the Court must now decide if Plaintiffs' lawsuit ends today. At this point, the statute of limitations for Plaintiffs' Section 1983 claim against Defendant has expired, so any dismissal of their case is essentially with prejudice. (*See* Doc. 8 at ¶ 3 (describing events from November 2022)); *Harris v. City of Canton*, 725 F.2d 371, 376–77 (6th Cir. 1984) (holding that if the limitations period expires before a dismissal, "any new action" brought [after that dismissal] is generally untimely"); *Bowles v. City of Cleveland*, 129 F. App'x 239, 243 (6th Cir. 2005) (noting the same). For that reason, denying further leave to amend would be a harsh result.

Notably, Plaintiffs have submitted three complaints in this litigation, and none has stated a claim upon which relief can be granted. (*See, e.g.*, Docs. 3, 8, 13-1 (Plaintiffs' complaints); Doc. 6 (moving to amend and seemingly conceding Plaintiffs named the wrong defendant); Doc. 13 (moving to amend again after Defendant moved to dismiss)). And Plaintiffs offered nothing in the briefing on these Motions to buttress their Section 1983 claim against Defendant. *Cf. Newberry v. Silverman*, 789 F.3d 636, 645–46 (6th Cir. 2015) (allowing an amendment where the plaintiff filed a ten-page affidavit in response to a motion to dismiss and gave more facts to support a claim). In fact, Plaintiffs did not even file a reply to their motion for leave to amend. (Doc. 14 (giving Plaintiffs a deadline to file a reply to the Motion to amend, which they did not do)).

Even so, the Court cannot say that Plaintiffs' claim against Defendant is completely meritless at this stage. *See Newberry*, 789 F.3d at 646 ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."). Therefore, the Court will give Plaintiffs one more chance to amend. Plaintiffs are **PERMITTED** to file an amended complaint **within twenty-one (21) days of the**

15

**date of this Order**.  The Court will terminate the case if an amendment is not filed by the deadline.

IV.     **CONCLUSION**

Defendant's Motion to Dismiss (Doc. 10), is **GRANTED**, and Plaintiffs' Motion for Leave to Amend Complaint (Doc. 13), is **DENIED**.  The Court **GRANTS** Plaintiffs leave to amend one more time.  Plaintiffs are **PERMITTED** to file an amended complaint **within twenty-one (21) days of the date of this Order**.

IT IS SO ORDERED.


Date:   April 21, 2025                                      /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE